JOURNAL ENTRY AND OPINION
{¶ 1} On May 2, 2006, plaintiff-appellant Lillie Alexander ("Alexander") filed a class action complaint against defendant-appellee Wells Fargo Financial Ohio 1, Inc. ("Wells Fargo") alleging violation of R.C. 5301.36, namely, that Wells Fargo failed to file an entry of satisfaction of mortgage with the Cuyahoga County Recorder within ninety days of full payment of the mortgage.
 {¶ 2} Alexander seeks to represent a class of all persons who, from February 2, 2000, paid residential mortgages in full where Wells Fargo, among other named banks, did not file an entry of satisfaction of mortgage with the Cuyahoga County Recorder's office within ninety days of loan payoff. *Page 3 
 {¶ 3} On June 5, 2006, Wells Fargo filed a "motion to compel arbitration and stay or dismiss proceedings." On December 22, 2006, the trial court granted Wells Fargo's motion to compel arbitration and held:
 "Plaintiff's claims are arbitrable for the following reasons: her claims would not exist but for the transaction that is the subject of the arbitration agreement and therefore not outside the scope of the arbitration agreement; agreement is neither substantively nor procedurally unconscionable in violation of public policy. Therefore, the case is hereby stayed pending arbitration pursuant to the arbitration agreement."
 {¶ 4} The facts giving rise to the instant action began on December 5, 2000, when Alexander, Henry Alexander, and Wells Fargo entered into a loan agreement and an arbitration agreement pertaining to real property located at 10305 Dove Avenue in Cleveland, Ohio. The arbitration agreement is entirely separate from the loan agreement and is signed by Henry and Lillie Alexander and by Wells Fargo Bank and reads in part:
 "(1) RIGHT TO ELECT TO ARBITRATE: Any party covered by this Agreement may elect to have any claim, dispute or controversy ("Claim") of any kind (whether in contract, tort, or otherwise) arising out of or relating to your Loan Agreement, or any prior or future dealings between us, resolved by binding arbitration. A Claim may include, but shall not be limited to the issue of whether any particular Claim must be submitted to arbitration, or the facts and circumstances involved with your signing of this Agreement, or your willingness to abide by the terms of this Agreement or the validity of this Agreement. Any such election may be made any time both parties agree that neither party has to initiate an arbitration proceeding before exercising remedies of self-help repossession, non-judicial *Page 4 
foreclosure, replevin or other similar remedies. The filing of a lawsuit or the pursuit of other self-help remedies does not mean that either party has waived the right to subsequently elect to submit a Claim to arbitration.
 * * *
 (5) LIMITATION OF RIGHTS: IF ARBITRATION IS ELECTED BY EITHER PARTY UNDER THIS AGREEMENT: (A) YOU WILL NOT HAVE THE RIGHT TO GO TO COURT OR TO HAVE A JURY TRIAL; (B) YOU WILL NOT HAVE THE RIGHT TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED IN THE RULES; (C) YOU WILL NOT HAVE THE RIGHT TO HAVE ANY CLAIM ARBITRATED AS A CLASS ACTION UNDER THE RULES OR UNDER ANY OTHER RULES OF CIVIL PROCEDURE * * *."
 {¶ 5} Wells Fargo recorded the corresponding mortgage on December 13, 2000. Alexander paid the mortgage in full on or about July 27, 2001. Wells Fargo filed the entry of satisfaction of judgment on January 11, 2002.
 {¶ 6} On January 10, 2007, Alexander appealed and asserted one assignment of error for our review: "The trial court erred in granting Defendant's Motion to Stay or Dismiss Pending Arbitration."
 {¶ 7} "Initially, we note that this court does not agree upon the standard of review applicable to a trial court's decision denying a stay of proceedings and referral to arbitration. Several panels have held that questions regarding whether the parties have made an agreement to arbitrate is a question of law requiring de novo review, while others have held that the appropriate standard is whether the trial *Page 5 
court abused its discretion in rendering its decision." Shumaker v.Saks, Inc., Cuyahoga App. No. 86098, 163 Ohio App.3d 173,2005-Ohio-4391.
 {¶ 8} Ohio public policy favors arbitration. R.C. 2711.01(A) reads as follows:
 "A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."
 {¶ 9} Furthermore, both the United States Code and the Ohio Revised Code contain arbitration provisions:
 "There are four pertinent statutes that relate to the enforcement of arbitration agreements: Sections 3 and 4 of the Federal Arbitration Act ("FAA") contained in Title 9, U.S. Code, R.C. 2711.02 and 2711.03. Section 3 of the FAA and R.C. 2711.02 apply to motions to stay proceedings pending arbitration. Section 4 of the FAA and R.C. 2711.03 apply to motions to compel arbitration." Pyle v. Wells Fargo Financial et al., Franklin App. No. 05AP-644, 2005-Ohio-6478.
 {¶ 10} Here, the arbitration agreement is governed by the FAA and not the Ohio Revised Code. Wells Fargo based its motion to compel arbitration and stay or dismiss based upon the same. "[T]he Ohio Supreme Court has found that Section 3 of the FAA `closely resembles' R.C.2711.02, and Section 4 of the FAA is `very similar' to R.C. 2711.03, and that the procedural requirements under these statutes *Page 6 
are the same * * *." Pyle, supra; see, also, Maestle v. Best Buy Co.,100 Ohio St.3d 330, 2003-Ohio-6465.
 {¶ 11} Where a court determines that a case is referable to arbitration pursuant to an arbitration agreement, a court shall, upon application by one of the parties, stay the proceedings until arbitration is complete. 9 U.S.C. _ 3 (2003). Where the making of the arbitration agreement is not at issue, the court shall direct the parties to proceed to arbitration pursuant to agreement. 9 U.S.C. _ 4 (2003).
 {¶ 12} Alexander, however, argues that the trial court erred in granting Wells Fargo's motion for the following reasons: first, the case sub judice is beyond the scope of the arbitration agreement; second, the arbitration agreement is void as against public policy; and third, the arbitration agreement is unconscionable.
 {¶ 13} Regarding Alexander's argument that the instant dispute is beyond the scope of the arbitration agreement, the trial court must first determine whether the parties agreed to arbitrate the issue in dispute. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,Inc. (1985), 473 U.S. 614. We have held that, "An arbitration clause may be legally unenforceable if the clause is not applicable to the matter at hand * * *." Schwartz v. Alltel Corp., Cuyahoga App. No. 86810,2006-Ohio-3353.
 {¶ 14} Furthermore, "Despite the strong public policy in favor of arbitration, it is basic law that a party cannot be required to arbitrate that which has not been agreed as a subject of arbitration."Shumaker, supra. In Shumaker, we found that: *Page 7 
 "Appellants argue, however, that Shumaker's claim is related to Caputo's credit account because `the relationship between the goods Mrs. Caputo financed and this case is undeniable — if Mrs. Caputo has not made those purchases, there would be no claim of unconscionable sales practices.' We make no such connection. The absurdity of appellants' preposterous argument is demonstrated by defense counsel's concession at oral argument that if Caputo had purchased the goods with her Mastercard, the case could proceed without arbitration. Moreover, appellants' argument, taken to its logical conclusion, would require that every tort claim against Saks by one of its credit card holders be arbitrated. Under appellants' theory, even a slip and fall on store property would somehow be an event `relating to' an account with Saks.
 Appellee is not making any claim relating to Caputo's account or even the goods and services purchased on that account. Rather, he is claiming that appellants'conduct in preying on a lonely, elderly lady, even after they were asked to stop, was an unconscionable sales practice in violation of Ohio Consumer Sales Practices Act. Such a claim is not even remotely related to Caputo's account with Saks."
 {¶ 15} More specifically, Alexander cites to case law in support of her contention that the recording of a mortgage satisfaction or real estate lien release is not part of the lending process because it necessarily occurs after satisfaction of the debt. See Pinchot v.Charter One Bank, F.S.B., 99 Ohio St.3d 390, 2003-Ohio-4122. ThePinchot court held:
 "The recording of a mortgage satisfaction or real estate lien release is not an integral part of the lending process, as it occurs after the debt is satisfied and the extension of credit is extinguished. Such a recording requirement cannot even begin until the mortgage has already been terminated. It does not center around the essential reasons lenders issue home loans, for it has nothing to do with charging and collecting interest or any other lending or credit-related function. And such a recording requirement cannot be realistically connected to lending practices or to the operations of savings associations because it has no concrete significance to whether and how loans are made. The *Page 8 
mortgage is taken to secure the loan and filed to perfect the lien. When the loan is paid, the mortgage is satisfied, leaving a cloud on the title to the realty until the satisfaction is recorded."
 {¶ 16} We agree, and find that in the case sub judice, Alexander satisfied the note by payment in full. Wells Fargo's statutory duty to release the mortgage lien arose thereafter. See Charles L. Bluford, etal. v. Wells Fargo Financial Ohio 1, Inc. (Feb. 21, 2008), Cuyahoga App. No. 89491. Thus, it cannot be said that Wells Fargo's statutory duty to timely release the mortgage lien is related to the arbitration clause set forth in the note at issue. Id.
 {¶ 17} Because the arbitration provision at issue does not apply to this dispute, we need not address whether the arbitration agreement is void as against public policy or whether the arbitration agreement is unconscionable. Id.
 {¶ 18} After reviewing the entire record, in applying the law to the facts of this case, we find that the trial court erred by granting Wells Fargo's motion.
 {¶ 19} Alexander's sole assignment of error is sustained. Accordingly, we reverse the judgment of the trial court, and we remand this matter for further proceedings consistent with this opinion.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. *Page 9 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., CONCURS IN JUDGMENT ONLY
MELODY J. STEWART, J., DISSENTS (SEE DISSENTING OPINION)